WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Deborah O'Grady-Spear,                    No. CV-15-08088-PCT-JAT

                    Plaintiff,            **ORDER**

v.

Carolyn W. Colvin,

                    Defendant.

Pending before the Court is Plaintiff Deborah O'Grady-Spear's appeal from the Social Security Commissioner's denial of her application for disability benefits, disability insurance benefits, and supplemental security income under the Social Security Act. Plaintiff argues that the administrative law judge ("ALJ") erred by finding that (1) Plaintiff's fibromyalgia is neither medically determinable nor severe, (2) Plaintiff's migraines are not severe, and (3) Plaintiff is not credible. The Court now rules on Plaintiff's appeal.

**I.     Background**

    **A.     Procedural Background**

On November 24, 2010, Plaintiff filed an application for disability and disability insurance benefits. (Tr. 16).[1] On December 8, 2011, Plaintiff filed an application for supplemental security income. (*Id.*) In her applications, Plaintiff alleged a disability onset

---

[1] Citations to "Tr." are to the certified administrative transcript of record. (Doc. 17).

date of May 31, 2007. (*Id.*) Plaintiff's claims were initially denied on July 18, 2012, and upon reconsideration on November 1, 2012. (*Id.*) Plaintiff timely requested a hearing, which was conducted before ALJ Paula Fow via videoconference on July 16, 2013. (*Id.*) On September 19, 2013, the ALJ issued an unfavorable decision. (Tr. 26). After Plaintiff's request for review by the Social Security Administration Appeals Council was denied, she commenced this action in federal court on May 5, 2015. (Doc. 1).

### B.  Plaintiff's Background

Plaintiff was born in 1951 and lives with her husband in Flagstaff, Arizona. (Tr. 48, 97). Plaintiff completed high school and multiple years of college before working for several decades as a bookkeeper, auditor, office manager, accounting clerk, and retail manager. (Tr. 48, 61, 72). Currently, Plaintiff's sole source of income is from retirement social security benefits. (Tr. 49).

In 2006, an ALJ determined that Plaintiff was disabled and entitled to social security benefits from September 4, 2000 through August 31, 2005. (Tr. 75). During that closed period of disability, Plaintiff suffered from the following impairments: fibromyalgia, asthma, obesity, sinus problems, affective disorder-moderate, and cervical arthritis. (Tr. 73). The ALJ found, however, that on September 1, 2005, Plaintiff "experienced 'medical improvement' related to her ability to work" and "retained the residual functional capacity to perform sedentary exertional work." (Tr. 74). Consequently, as of September 1, 2005, Plaintiff has not been found disabled under social security standards. Plaintiff now seeks disability with an alleged onset date of May 31, 2007. (Doc. 1).

## II.  Legal Standard

The ALJ's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quotation omitted). "Substantial evidence" means more than a mere scintilla, but less than a preponderance. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). In determining whether there is substantial evidence to support a decision, the Court considers the record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the ALJ's conclusions. *Reddick*, 157 F.3d at 720. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant*, 753 F.2d at 1453 (citations omitted); *see Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the Commissioner's decision, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

Notably, the Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. Rather, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

## A.    Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show that, among other things, she is "under a disability." 42 U.S.C. § 423(a)(1)(E). The

Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). A person is:

> under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

*Id.* § 423(d)(2)(A).

### B.    Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520(a)(4); *see also Reddick*, 157 F.3d at 721. A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine. *Id.* § 404.1521(b). Further, the impairment must either have lasted for "a continuous period of at least twelve months," be expected to last for such a period, or be expected "to result in death." *Id.* § 404.1509 (incorporated by reference in *id.* § 404.1520(a)(4)(ii)). The "step-two inquiry is a *de minimis* screening device to dispose of groundless claims."

*Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe medically determinable impairment, then the claimant is not disabled.

3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the] case record." *Id.* § 404.1520(e). A claimant's "residual functional capacity" is the most he can still do despite all his impairments, including those that are not severe, and any related symptoms. *Id.* § 404.1545(a)(1).

4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If the claimant can still perform the kind of work he previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5. At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and his "age, education, and work experience." *Id.* § 404.1520(g)(1). If the claimant can perform other work, he is not disabled. If the claimant cannot perform other work, he will be found disabled.

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. *See id.* § 404.1520(a)(3); *id.* § 404.1520b. This includes medical opinions, records, self-reported symptoms, and third-party reporting. *See id.* §§ 404.1527, 404.1529; Social Security Ruling ("SSR") 06–3p, 71 Fed. Reg. 45593-03.

### C.      The ALJ's Evaluation under the Five-Step Process

At step one of the sequential evaluation process the ALJ found that Plaintiff did not engage in substantial gainful activity since her alleged onset date of May 31, 2007. (Tr. 18). At step two, the ALJ concluded that Plaintiff had the following "severe impairments: diabetes mellitus; fibromyalgia; sinus migraines; asthma and obesity." (*Id.*) The ALJ deemed these impairments "severe" because they "have caused and will continue to cause more than minimal work-related functional limitations." (Tr. 18–19). At step three, the ALJ determined that Plaintiff's mental impairments did not meet or equal any of the listed impairments in the Social Security regulations. (Tr. 20).

Before moving to step four, the ALJ conducted an RFC determination in light of Plaintiff's testimony and the objective medical evidence. (*Id.*) The ALJ found that Plaintiff "has the residual functional capacity to perform medium work" with several physical limitations and stated that her fibromyalgia "does not meet the requirements set forth by the Social Security Administration needed for the determination that fibromyalgia is a medically determinable impairment." (Tr. 20, 22). The also ALJ found that Plaintiff's "medical records do not contain any objective findings suggesting that her migraines have imposed significant limitation on her ability to perform basic work activities for any continuous 12-month period." (Tr. 23).

At step four, the ALJ found that based on the assessed RFC, Plaintiff could perform her past work of accounting clerk, office manager, and retail manager. (Tr. 25). At step five, the ALJ declined to make an alternative finding that Plaintiff could perform other jobs existing in the national economy. (Tr. 25–26). Because Plaintiff could perform her past work, the ALJ held that Plaintiff was not disabled. (Tr. 26).

### III.    Analysis

Plaintiff makes three arguments for why the Court should set aside the ALJ's decision and remand her case for further proceedings. Specifically, Plaintiff asserts that the ALJ erred in her findings regarding Plaintiff's (1) fibromyalgia, (2) migraines, and (3) credibility. (Doc. 19). The Court will address each argument in turn.

1

      A.      **Whether the ALJ Properly Considered Plaintiff's Fibromyalgia**

2

           **1.**      **Background**

3        The Court first turns to Plaintiff's argument that the ALJ erred by finding that

4 Plaintiff's fibromyalgia was neither "medically determinable" nor "severe." (Doc. 19 at

5 4–10). Initially, Plaintiff asserts that the ALJ's fibromyalgia findings were contradictory.

6 (*Id.*) Particularly, Plaintiff finds internally inconsistent the ALJ's factual finding at step

7 two that Plaintiff's fibromyalgia was "severe" and the ALJ's later finding that Plaintiff's

8 fibromyalgia was "not medically determinable." (*Id.* at 5–6).[2] Regardless of the

9 decision's consistency, Plaintiff contends that the ALJ erred in concluding that her

10 fibromyalgia was not "medically determinable." (*Id.* at 5). Plaintiff asserts that the ALJ

11 inaccurately found that she failed to establish the requisite number of tender points

12 needed for fibromyalgia and that all other potential causes of her symptoms had been

13 excluded by a licensed physician. (*Id.* at 4–14). Plaintiff insists that the ALJ's error was

14 not harmless because it made "meaningful judicial review [impossible] since, by

15 definition, the ALJ's error is an error of omission." (*Id.* at 9–10).

16        In response, the Commissioner argues that the ALJ's decision is not contradictory.

17 (Doc. 23 at 4–8). The Commissioner explains that the ALJ found Plaintiff's fibromyalgia

18 to be a "severe" impairment at step two and "[a]lthough the ALJ's wording may not have

19 been clear, the ALJ did not conclude that fibromyalgia was not a medically determinable

20 impairment." (*Id.* at 6). According to the Commissioner, when the ALJ stated that

21 Plaintiff's fibromyalgia "does not meet the requirements set forth by the Social Security

22 Administration needed for the determination that fibromyalgia is a medically

23 determinable impairment," (Tr. 22), the ALJ was "explaining that Plaintiff's medical

24 records during the relevant period detracted from Plaintiff's claims of disability following

25 her alleged onset date," (Doc. 23 at 6). The Commissioner also asserts that substantial

26 evidence supports the ALJ's conclusion that the record evidence did not establish the

27

28        [2] Due to this inconsistency, Plaintiff argues that the ALJ erred by finding that her fibromyalgia was "neither 'medically determinable' or 'severe.'" (*Id.* at 4).

requisite number of tender points or that a licensed physician excluded all other impairments before diagnosing Plaintiff with fibromyalgia. (*Id.* at 6–8).

### 2.    Analysis

Regarding Plaintiff's fibromyalgia, the ALJ found, in relevant part:

> 3.    The claimant has the following severe impairments: diabetes mellitus; fibromyalgia; sinus migraines; asthma and obesity.
>
> The medical evidence of record documents the existence of the above-mentioned impairments. The claimant's symptoms arising from her diabetes mellitus; fibromyalgia; sinus migraines and asthma have caused and will continue to cause more than minimal work-related functional limitations. As such, the undersigned finds these impairments 'severe.'

(Tr. 18–19) (internal citations omitted).

> The record contains several references to the diagnosis of fibromyalgia. However, these medical records do not confirm that the claimant has the requisite number of tender point findings (or any tender points) and there is no evidence that licensed physicians have excluded other impairments as required in SSR 12-2p. Moreover, physical examination shows gait and station as 'normal'; head and neck as 'normal' alignment and mobility[;] and the spine, ribs and pelvis show 'normal' alignment and mobility with no deformity. Consequently, the undersigned finds that this impairment does not meet the requirements set forth by the Social Security Administration needed for the determination that fibromyalgia is a medically determinable impairment.

(Tr. 22) (internal citations omitted).

The Court agrees with Plaintiff that the ALJ's findings are internally inconsistent. The Commissioner's artful attempt to reconcile the findings by rewording them is unpersuasive. As readily seen, the ALJ expressly found at step two that Plaintiff's fibromyalgia was a "severe impairment," but when crafting the RFC, stated that her fibromyalgia was not a "medically determinable impairment." There can be no debate that these findings contradict each another as an "impairment" must be "medically determinable" to be "severe." *See* 20 C.F.R. § 404.1520(a)(4)(ii). The Court therefore concludes that the ALJ's findings regarding Plaintiff's fibromyalgia were in error.

Nonetheless, not all errors mandate reversal of an ALJ's non-disability decision. If

an error is "harmless," i.e., "inconsequential to the ultimate nondisability determination[,]" reversal is prohibited. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quotations omitted). The burden of establishing that an "error is harmful normally falls upon the party attacking the agency's determination." *Id.* at 1111 (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). In this case, the ALJ performed a full five-step evaluation and crafted Plaintiff's RFC after finding that her fibromyalgia was not a medically determinable impairment. (Tr. 22). Thus, the ALJ's inconsistent findings did not prevent a complete review of Plaintiff's application. Accordingly, if substantial evidence supports the ALJ's finding that Plaintiff's fibromyalgia was not a medically determinable impairment under the Social Security Rulings ("SSR"), the Court will not reverse the ALJ's decision because the internal inconsistency would be harmless.

For fibromyalgia to be considered a medically determinable impairment, Plaintiff must establish the following three elements: (1) a history of widespread pain, (2) at least eleven positive tender points on physical examination, and (3) evidence that other disorders that could cause the symptoms or signs were excluded by a licensed physician. SSR 12-2p.[3] Here, the ALJ found that Plaintiff's fibromyalgia was not a medically determinable impairment for several reasons. First, the ALJ explained that the record was devoid of any medical evidence establishing the requisite number of tender points. (Tr. 22). Second, the ALJ stated that Plaintiff failed to provide any evidence that a licensed physician excluded all other impairments before diagnosing fibromyalgia. (*Id.*) Third, the ALJ considered that Plaintiff was purportedly diagnosed with fibromyalgia in 1985 but was able to work for nearly two dozen years thereafter. (*Id.*) Finally, the ALJ noted that Plaintiff did not see specialists for treatment and her physical examination showed normal findings as to her gait, station, head, neck, spine, ribs, and pelvis. (*Id.*)

Plaintiff argues that the ALJ erred in her findings regarding tender points and

---

[3] The Court notes that even if all three of these elements are proven, SSR 12-2p does not obligate the Social Security Administration to find that a claimant has a medically determinable impairment of fibromyalgia. Rather, SSR 12-2p states that the Social Security Administration "may find" same.

exclusion of other impairments. (Doc. 19 at 6–8). Plaintiff cites several documents in the record in attempt to show that she established the requisite number of tender points. (*Id.*) However, some of the medical evidence Plaintiff identifies is from several years before Plaintiff's alleged onset date of May 31, 2007. *See* (Tr. 341). Moreover, the 2010 consultative examiner report to which Plaintiff cites does not establish the requisite number of tender points and in fact observes that Plaintiff was capable of working with only minor limitations. (Tr. 375–81) (noting that Plaintiff "was tender at points delineated for fibromyalgia as well as control points in between" but could "stand and/or walk" for six to eight hours per workday and had no limitations sitting).[4] On the other hand, Glenn R. Kunsman, a 2012 consultative examiner whose opinion was assigned "great weight" by the ALJ, diagnosed Plaintiff with "fibromyalgia with 18 positive tender points." (Tr. 426). However, Dr. Kunsman concluded that Plaintiff's conditions would not "impose any limitations for 12 continuous months." (*Id.*) Because a medically determinable impairment must be expected to last for twelve months or result in death, *see* 20 C.F.R. § 404.1509, substantial evidence supports the ALJ's finding that Plaintiff failed to establish the requisite number of tender points.

Plaintiff also contends she provided evidence that a licensed physician rejected all other potential causes of her symptoms before diagnosing fibromyalgia. (Doc. 19 at 7–8). The Court disagrees. As before, Plaintiff points to medical records that were applicable to her *prior* disability between 2000 and 2005. (*Id.*) However, the ALJ who awarded Plaintiff benefits for that closed period specifically found that Plaintiff improved from her disability and was not disabled as of August 31, 2005. (Tr. 75). Accordingly, any evidence establishing Plaintiff's fibromyalgia before that date is irrelevant to the present inquiry of whether her fibromyalgia was a medically determinable impairment at the time of the alleged onset date in this case, May 31, 2007. Beyond this material, Plaintiff identifies no other evidence showing that a licensed physician excluded all other causes

---

[4] Similarly, Plaintiff cites to a 2006 report which does not expressly state that all other potential causes of her symptoms had been excluded. *See* (Tr. 337).

of her symptoms before diagnosing fibromyalgia.[5] Accordingly, substantial evidence supports the ALJ's finding that Plaintiff failed to show that a licensed physician excluded other causes of Plaintiff's symptoms and signs before diagnosing fibromyalgia.

### 3.   Conclusion for Plaintiff's Fibromyalgia

For the reasons set forth above, after "look[ing] at the record as a whole to determine whether the ALJ's error alters the outcome of the case," the Court concludes that although the ALJ issued contradictory findings as to Plaintiff's fibromyalgia, the error was harmless as it was "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115.

### B.   Whether the ALJ Properly Considered Plaintiff's Migraines

#### 1.   Background

Plaintiff next argues that the ALJ erred by finding that Plaintiff's sinus migraines were "severe" but not "vocationally severe." (Doc. 19 at 10–14) (citing Tr. 18, 23). Plaintiff asserts that "[t]he ALJ provides no explanation for why she found migraines to be 'severe' but then concluded that there was no evidence that they 'imposed limitations.' . . . [I]t is impossible as a matter of law for impairment to be severe and cause no limitations at all." (Doc. 24 at 4) (citations omitted). Plaintiff further asserts that the ALJ erred by considering "objective medical findings" when reviewing the severity of Plaintiff's migraines because migraines are a "diagnosis of exclusion." (Doc. 19 at 12). Plaintiff also insists that the ALJ erred by not expressly considering Listing of Impairment – Adult Listing ("Listing") 11.03. (*Id.* at 11).

In response, the Commissioner explains that "[r]ather than questioning the existence of [Plaintiff's] headaches, the ALJ noted a lack of evidence that these headaches imposed significant limitation on work activity." (Doc. 23 at 9). The Commissioner argues the ALJ properly considered objective medical evidence when

---

[5] Plaintiff states that Dr. Kunsman noted that Plaintiff has a "long history of fibromyalgia." (Doc. 19 at 7). Dr. Kunsman, however, never expressly excluded all other impairments. (Tr. 421–26).

determining the severity of Plaintiff's migraines. (*Id.*) Finally, the Commissioner contends that while the ALJ did not "expressly" consider Listing 11.03, the ALJ "implicitly" analyzed the Listing. (*Id.* at 10).

### 2. Analysis

The ALJ made the following findings: (1) Plaintiff's migraines were a "severe" impairment at step two, (Tr. 18–19), and (2) Plaintiff "failed to prove she has a vocationally 'severe' migraine condition" because her "medical records do not contain any objective findings suggesting that her migraines have imposed significant limitations on her ability to perform basic work activities for any continuous 12-month period," (Tr. 23). As with fibromyalgia, the Court agrees with Plaintiff that these findings are internally inconsistent. A "severe" impairment means the impairment "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step two, the ALJ determined that Plaintiff's migraines were a "severe medically determinable impairment" but found expressly to the contrary when crafting Plaintiff's RFC. This was error.

Nonetheless, as outlined above, reversal of a non-disability determination is improper if the ALJ's error was harmless. In this regard, Plaintiff asserts that the ALJ erred by reviewing "objective medical findings" as a means to reject Plaintiff's subjective pain testimony. (Doc. 19 at 12). However, although the existence of subjective pain testimony cannot be rejected solely due to lack of corroborating objective medical evidence, an ALJ may properly look to objective medical evidence to determine the vocational severity of an applicant's complaints. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." (citing 20 C.F.R. § 404.1529(c)(2))). Here, the ALJ found that Plaintiff's "medical records do not contain any objective findings suggesting that her migraines have imposed significant limitations on her ability to perform basic work

activities for any continuous 12-month period." (Tr. 23). Beyond her own statements of severity, Plaintiff does not point to any evidence in the record establishing that her migraines imposed more than minimal related work limitations. Thus, assuming the existence of Plaintiff's migraines, the ALJ properly reviewed the "objective findings" of the medical record and found the severity of the migraines to be nominal. Accordingly, substantial evidence supports the ALJ's finding that Plaintiff's migraines were not "vocationally severe" due to the lack of "objective findings" in the medical record. (*Id.*)[6]

Moreover, the ALJ did not commit reversible error by not expressly identifying Listing 11.03 in the decision. Listing 11.03 identifies non-convulsive seizures as those which cause significant interference with daytime activities. Here, the ALJ considered the relevant aspects of Listing 11.03 in her analysis by discussing the lack of evidence that Plaintiff's migraines caused significant interference in basic daily activities. (Tr. 23).

### 3.      Conclusion for Plaintiff's Migraines

Based on the foregoing, the Court finds that the ALJ erred by issuing contradictory findings as to Plaintiff's migraines; however, because this error was inconsequential to the ALJ's ultimate non-disability determination, it was harmless. Therefore, the Court will not remand for further proceedings based on this error.

### C.      Whether the ALJ Properly Considered Plaintiff's Credibility

### 1.      Background

As her final contention of error, Plaintiff argues that the ALJ improperly found her to be non-credible without considering her documented lack of health insurance and "incredibly strong work record." (Doc. 19 at 14). The Commissioner responds that Plaintiff failed to establish her inability to afford medical coverage. (Doc. 23 at 12). The Commissioner also contends that the ALJ's analysis of Plaintiff's work history was a reasonable interpretation of the evidence. (*Id.* at 13–15).

---

[6] The Court notes that following her alleged onset date, Plaintiff consistently and repeatedly denied having any problems with headaches. *See* (Tr. 361, 394, 439, 444, 452, 468, 472). Although the ALJ did not cite these documents in the decision, the ALJ properly relied upon the lack of evidence as to the severity of Plaintiff's migraines.

2.      **Analysis**

a.      **Health Insurance**

Plaintiff argues that the ALJ erred in her credibility determination by failing to consider Plaintiff's "documented" lack of health insurance. (Doc. 19 at 14). According to Plaintiff, the ALJ erred by "cit[ing] lack of objective evidence in addition to alleged 'conservative treatment' as a basis to discredit her symptoms without acknowledging her lack of medical insurance[.]" (*Id.* at 15). The record, however, does not establish that Plaintiff lacked the means to obtain necessary medical treatment. Simply because a claimant does not have medical insurance does not mean that she cannot obtain necessary medical treatment. On the contrary, Plaintiff's testimony clearly indicates that she has been able to obtain the necessary medications for her ailments. *See* (Tr. 54–56) (listing current medications as estrodiol, metformin, guaifenesin, furosemide, atenolol, Lisinopril, levothyroxine, Effexor XR, albuterol spray, azmacort, and nortriptyline). Plaintiff does not point to evidence that establishes she was unable to afford necessary treatment due to a lack of health insurance, and her treatment records indicate that she has been able to obtain ongoing medical care throughout her alleged disability period. *See* (Tr. 337–39, 347–68, 386–420, 438–53, 462–79). Consequently, as Plaintiff failed to establish that she was unable to afford necessary medical treatment, the ALJ did not err by considering Plaintiff's "conservative treatment" as a factor diminishing Plaintiff's credibility.

b.      **Work History**

Similarly, Plaintiff asserts that the ALJ erred by failing to consider her "incredibly strong work record" in the credibility analysis. (Doc. 19 at 15). The Court disagrees. The ALJ expressly examined Plaintiff's testimony that she quit her previous job immediately after she was awarded disability benefits by the prior ALJ. (Tr. 23). This evidence alone is a "clear and convincing" reason for discrediting Plaintiff and, in fact, is "affirmative evidence of malingering." *See Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010) (holding that ALJ properly found "affirmative evidence of malingering" because the claimant "reported that he wanted to do volunteer work but refrained for fear of

1    impacting his disability benefits, and claimed disability dating from his last day of

2    employment even though he admitted at the hearing that he left his job because his

3    employer went out of business and probably would have worked longer had his employer

4    continued to operate"); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001), *as*

5    *amended* (Nov. 9, 2001) (finding that ALJ properly discredited a claimant's testimony

6    because he "stated at the administrative hearing and to at least one of his doctors that he

7    left his job because he was laid off, rather than because he was injured").

8        To the extent Plaintiff argues that her "incredibly strong work record" establishes

9    that she is credible, the Court disagrees. The ALJ expressly considered Plaintiff's

10   testimony that she had been able to work for over twenty years with her impairments and

11   determined that this factor detracted from Plaintiff's credibility. (Tr. 23). An ALJ may

12   properly discredit a social security claimant's testimony if the claimant was able to work

13   with the allegedly disabling impairments. *See Morgan v. Comm'r of Soc. Sec.*, 169 F.3d

14   595, 601 (9th Cir. 1999) (discrediting a claimant's testimony in part because he held his

15   previous job while under the same allegedly disabling conditions). Although Plaintiff

16   argues that similar evidence has been interpreted as indicating credibility, the ALJ's

17   finding was a rationale and permissible interpretation of the evidence that must be

18   upheld. *See Gallant*, 753 F.2d at 1453.

19                **3.      Conclusion for Plaintiff's Credibility**

20       Based on the foregoing, the Court concludes that the ALJ did not err in finding

21   Plaintiff to be non-credible. The reasons appealed by Plaintiff constitute "clear and

22   convincing" reasons for discrediting her testimony.[7]

23   _____

24          [7] Even without considering these two reasons, the ALJ provided multiple other
     "clear and convincing" reasons for finding Plaintiff's testimony to be non-credible thus
25   requiring the ALJ's decision to be upheld. *See Carmickle v. Comm'r of Soc. Sec. Admin.*,
     533 F.3d 1155, 1162 (9th Cir. 2008). Namely, the ALJ also noted Plaintiff's daily activity
26   level, ability to effectively control her symptoms with medication, and self-reporting that
     her impairments do not impact her daily activities. (Tr. 23). As Plaintiff does not contend
27   the ALJ erred in these areas, she waived doing so. *See Indep. Towers of Wash. v.
28   Washington*, 350 F.3d 925, 929 (9th Cir. 2003).

## IV.     Conclusion

For the reasons set forth above,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is affirmed. The Clerk of Court shall enter judgment accordingly and terminate this case.

Dated this 7th day of September, 2016.

James A. Teilborg
Senior United States District Judge